# UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| HYEWOONG YOON, | ) |
|     Plaintiff | ) Civil Action No.: 1:19-CV-10351-WGY |
| v. | ) |
| HYUNWOOK JOO | ) |
|     Defendant | ) |

## PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR JUDGMENT ON THE PLEADINGS

The Plaintiff, Hyewoong Yoon ("Allen"), for the reasons stated below, hereby opposes the Defendant, Hyunwook Joo's, Motion for Judgment on the Pleadings.

**I.      This Court Has Personal Jurisdiction Over Mr. Joo.**

      **A.      Mr. Joo's Motion for Judgment on The Pleadings, as it Relates to the Issue of Personal Jurisdiction, Should be Treated as a Rule 12(b)(2) Motion to Dismiss for Lack of Personal Jurisdiction.**

When a motion for judgment on the pleadings is brought under Fed. R. Civ. P. 12(c) that claims lack of personal jurisdiction, the motion should be treated as a motion to dismiss for lack of personal jurisdiction under Rule 12(b)(2), and the Court may consider matters outside of the pleadings in deciding the issue. Edison Industries, Inc. v. Chickasha Mobile Homes, Inc., 299 F. Supp. 1008, 1010 (1969). Because a motion for judgment on the pleadings focuses on the pleadings themselves, and not on matters outside of the pleadings such as affidavits, a motion for judgment on the pleadings is not well-suited for the determination of whether the court lacks personal jurisdiction over a defendant; matters relating to personal jurisdiction often are not apparent on the face of the pleadings, and a court considering a challenge to its jurisdiction with respect to a defendant may well need to receive affidavits and other relevant matters outside the pleadings in determining the jurisdictional facts of a case.   Sears Petroleum & Transport Corp. v. Ice Ban America, Inc., 217 F.R.D. 305, *5 (N.D. NY 2003).

When personal jurisdiction is challenged, a plaintiff must establish a "threshold" showing of jurisdiction but no more. That is, through affidavits and other competent evidence, a plaintiff must make out a prima facie case for the existence of personal jurisdiction, demonstrating at minimum that there is competent evidence to support each of the relevant jurisdictional prerequisites. Val Leasing, Inc. v. Hutson, 674 F. Supp. 53, 55 (D. Mass. 1987) (quoting North American Video Corp v. Leon, 480 F. Supp 213, 215-16 (D. Mass. 1979)).

In this case, Allen is submitting evidence in support of his claim that this Court has personal jurisdiction over Mr. Joo.

**B.     This Court has Jurisdiction of Mr. Joo both Under the Massachusetts Long Arm Statue, M.G.L. 223A § 3 and Under the United States Constitution.**

**1.     Facts Relating to Mr. Joo's Contacts with Massachusetts.**

**a.     Boston Tutelage.**

In July of 2016, after Allen moved to Cambridge, Mr. Joo came to his home to visit him. During his visit, he described to him a company called Boston Tutelage. He told Allen that Boston Tutelage offered private tutoring for college students, and that the tutors were ivy league students and/or graduates who specialized in different subjects. Mr. Joo said that the class schedule would be flexible, and that he could choose which days of the week and semesters to take classes in. (See Exhibit A, Affidavit of Hyewoong Yoon.)

Allen at first told Mr. Joo that he was not interested. Mr. Joo then called Allen multiple times during that period to try and convince him. Eventually, Mr. Joo prevailed with his intentions, and Allen shortly thereafter began taking lessons with a teacher named Tim Oh ("Mr. Oh") who Mr. Joo referred.

From July through October of 2016, Allen paid Mr. Joo $78,000.00 from his account. Allen's father funded these lessons. Allen made payments totaling $78,000.00 to Boston

Tutelage in 2016 as follows: $17,000.00 in July, $17,000.00 in August, $22,000.00 in September, and $22,000.00 in October. (See Exhibit B for the wire statements reflecting these payments. The statement of incorporation of Boston Tutelage is also attached as Exhibit C.)

At the time, Allen did not know what the price was for private tutoring in the Boston area or of private tutoring for college students in general. Mr. Joo told Allen that the $78,000.00 was the expense that the tutors charged, and that this would be paid to the tutors.

Mr. Oh lived with Allen from July through October of 2019 in Cambridge. Mr. Joo dropped Mr. Oh off at Allen's home at the start of their lessons. Mr. Oh is a graduate of Cornell University. Allen paid for all of Mr. Oh's rent, utilities, and food while he stayed with Allen, in addition to the $78,000.00 in tutoring fees. Tutoring payments went directly by wire from Allen's account to Boston Tutelage. (Exhibit B.)

In October of 2016, after Allen spoke with Mr. Oh, he learned that the price of his lessons was only $6,000.00 per month, not $20,000.00. Mr. Oh told Allen that Mr. Joo had also deceived him regarding these payments, by telling Mr. Oh that a payment of $2,000.00 per month would be taken from his pay checks to go towards Mr. Joo's efforts to find Mr. Oh a job in the finance industry for when the tutoring finished. It turned out that Mr. Joo did little if anything to help Mr. Oh find a job in the finance industry. So, Mr. Joo only paid $4,000.00 per month for four months to Mr. Oh, and collected $78,000.00 for Mr. Joo claiming all that money was being paid for his tutoring. (Exhibit A.)

In around November of 2016 Allen learned that Boston Tutelage was a sham company that did not have a group of teachers specializing in different subjects, or the organized program that Mr. Joo described. Rather, Boston Tutelage had one teacher, Mr. Oh, and was set up solely

to encourage Allen to pay many times what the actual cost of tutoring was in the Boston area. (Exhibit A.)

At the time Mr. Joo was the sole adult in the United States that Allen knew of to make big decisions for him like educational decisions, so he followed his advice in signing up for Boston Tutelage. It was not true that the $78,000.00 he paid represented Mr. Joo's or Boston Tutelage's expenses. Rather, the great bulk of the $78,000.00 went to Mr. Joo. (Exhibits A and B.)

After Allen stopped making payments to Boston Tutelage, he got a call from Mr. Joo in Massachusetts asking why he stopped making the payments. He told Allen that Boston Tutelage was going to call him about this. Immediately after Allen hung up the phone, he got a call from a man purporting to be calling from Boston Tutelage, asking why payments were no longer being made. It is likely that this individual was next to Mr. Joo when he called Allen given the short time lapse between the two calls. (Exhibit A.)

The $78,000.00 described above is part of the overall damages claimed in the complaint.

> **b.      Sending a Reporter to Massachusetts to Find Allen and Providing the Reporter with Allen's Immigration Information and False Information.**

In addition to falsely stating that Allen was improperly receiving money for his education, as discussed in the Complaint, Mr. Joo provided a reporter from the Korean Broadcasting System, Seyeon Lee ("Ms. Lee"), with information contained in Allen's application for a U.S. E2 investment visa. This application was in Allen's home when Mr. Joo visited him in Boston. A copy of this application appeared in the video broadcasted by KBS. The only way Mr. Joo could have gotten this application is by either taking it from Allen's home or making a copy of it while there. Allen did not give Mr. Joo permission to do either. (Exhibit C.)

An E2 visa is an avenue for individuals to stay in the U.S. legally by making an

4

investment of at least $1,000.000.00 in a U.S. business. Allen followed this requirement by investing $1,000,000.00 in BBQ in New Jersey. Allen received an E2 visa by complying with the requirements. (Exhibit A.)

Mr. Joo falsely stated to Ms. Lee that Allen was not complying with the terms of his E2 visa by not working at BBQ. This statement was false because to be eligible for an E2 visa the individual does not need to actually work at the business, as long they made the investment in the business. The statement was also factually false because Allen at the time did work for BBQ as the manager. After this statement was broadcast, Allen was treated negatively by other members of the Korean American community in his school. (Exhibit A.)

Mr. Joo was the instigator of a false broadcast on the KBS channel which stated that Allen was receiving money from his father that was improperly taken from his father's company. (See the Complaint and Exhibit A.) Mr. Joo, had called Ms. Lee to inform her of this false information, and went further by providing her with Allen's Massachusetts address. Exhibit A. Ms. Lee, when she came to Massachusetts, addressed Hyewoong Yoon as "Allen." Mr. Joo is the only person who could have told Ms. Lee that Hyewoong Yoon also goes by Allen.

    **C.**    **Jurisdiction is Proper Under the Massachusetts Long Arm Statute and the United States Constitution Based on Mr. Joo's Actions related to Boston Tutelage, Accessing Allen's Immigration Documents, and Sending a Reporter Here to Make a Defamatory Broadcast.**

      **1.**    **Actions in Massachusetts Related to Boston Tutelage.**

Under M.G.L. 223A § 3, "a court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action in law or equity arising from the person's (a) transacting any business in this commonwealth; (b) contracting to supply services or things in this commonwealth; (c) causing tortious injury by an act or omission in this commonwealth….". In this case, Mr. Joo engaged in all three which gave rise to Allen's claims for fraud and breach of

fiduciary duty. Mr. Joo transacted business in Massachusetts by starting Boston Tutelage and employing a tutor to teach Allen here for four months in 2016. Mr. Joon contracted to supply services in Massachusetts by his agreement with Allen to provide tutoring services to him here. Mr. Joo caused tortious injury by his acts in this state including coming to Massachusetts to deceive Allen regarding the price of tutoring services, and inducing Allen to pay many times the amount that such tutoring services cost.

The Court's exercise of personal jurisdiction over Mr. Joo would also satisfy the requirements of due process under the United States Constitution because Mr. Joo's actions constitute minimal contacts with this state, and Allen has claims which arise from those contacts. The contacts that Mr. Joo had with Massachusetts were purposeful, and directed specifically at a Massachusetts residence. In coming to Massachusetts and convincing Allen to sign up and pay for lessons with for Boston Tutelage, Mr. Joo cannot claim that its unfair that for a Court in Massachusetts to adjudicate a dispute arising from that transaction. See World-Wide Volkswagen Corp. v. Woodson 444 U.S. 286, 298 (1980) (defendant's contacts with the forum state must be purposeful and not based on the unilateral acts of the plaintiff). The name Mr. Joo chose, "Boston Tutelage," clearly shows he is directing his business at a Boston audience. The single act alone of Mr. Joo coming to visit Allen and deceiving him about the nature of Boston Tutelage is enough to give this Court personal jurisdiction over Mr. Joo. In addition to Mr. Joo coming here and convincing Allen to sign up for tutoring, he also operated tutoring services here for four months by employing Mr. Oh to teach Allen in Massachusetts, and received $78,000.00 in exchange.

**2.      By Defaming Allen in Massachusetts and Taking Possession of His Immigration Documents and Information, Mr. Joo Committed Acts that Caused Tortious Injury in Massachusetts.**

Mr. Joo's taking Allen's confidential immigration information in Massachusetts, and later providing it to Ms. Lee, was an act within this state that caused tortious injury here under M.G.L. Ch. 223A § 3(c).

Also, by contacting Ms. Lee to initiate a false and damaging story to be written about Allen, and by providing her with Allen's name and contact information in order that she could go to Massachusetts to produce the story, Mr. Joo acted through an agent to cause tortious injury in this state to Allen.

Mr. Joo established minimum contacts with Massachusetts by accessing Allen's confidential immigration information while here and then providing that information to Ms. Lee which meets the Constitutional requirement of asserting personal jurisdiction of Mr. Joo.

By providing Ms. Lee with Allen's address to produce a defamatory broadcast about him, which was filmed in Massachusetts, the injury that resulted to Allen in this state was not only foreseeable, but Mr. Joo knew and intended that the injury occur in Massachusetts. Unlike the defendant car dealer in World Wide who did not know and did not direct the plaintiff to drive into the forum state, here Mr. Joo knew that the effects of his defamatory comments would take place in Massachusetts, and also directed Ms. Lee to come here and make them by providing her with Allen's address. See Calder v. Jones 465 U.S. 783, 789-90 (1984) (holding that, in the defamation context, for state to exercise jurisdiction over non-resident defendants, defendant must aim actions at forum state, knowing they will have devastating impact on plaintiff, and that brunt of the injury will be felt in forum state.)

**D.      Allen's Other Claims in the Complaint are Pendent Claims to the Ones Giving Rise to Jurisdiction, and the Court Has Authority to Hear All Allen's Claims for That Reason.**

Of the claims that Allen has asserted in the complaint, if the Court finds any one is sufficient to exercise personal jurisdiction over Mr. Joo, then Allen's other claims against him, including those dealing with events that occurred in New Jersey, can be heard as "pendent claims", even if those other claims standing alone would not have been sufficient for this Court to base personal jurisdiction on them. See Val Leasing Inc., 674 F. Supp. at 56; Amtrol, Inc. v. Vent–Rite Valve Corp., 646 F. Supp. 1168, 1174-75 (D. Mass.1986) (holding that court may exercise pendent personal jurisdiction over foreign defendant with respect to state law claims that arise out of common nucleus of operative facts common to federal antitrust claim).

Here, the fraud and breach of fiduciary duty claims related to Boston Tutelage serve as "base claims" giving the Court pendent jurisdiction over other claims in the case. The claims related to Boston Tutelage arise out of a nucleus of operative facts with Allen's claims against Mr. Joo for similar actions in New Jersey. In both cases, there is a pattern of Mr. Joo convincing Allen and his father to pay him monies for him to pay to tutors which Mr. Joo then only pays a small percentage of to the tutors and keeps the majority of it. Regarding Mr. Joo's actions in New Jersey with respect to his mistreatment of Allen while acting as his guardian, while not as factually similar to the Boston Tutelage related claims as the claims related to New Jersey tutoring, these claims too arise out of Mr. Joo's general financial, physical, and emotional abuse of Allen for a period of around 9 years. It would also be against the interest of judicial economy, and create unnecessary expense for the parties, if Allen were required to sue Mr. Joo here for the claims more directly related to Boston, and to sue Mr. Joo in New Jersey for claims that occurred there.

With respect to Allen's claims against Mr. Joo for improperly accessing his immigration information in Massachusetts and giving it to Ms. Lee, and for providing Ms. Lee with false information about him here, those claims can either act as base claims or claims pendent to Allen's claims for fraud and breach of fiduciary duty that occurred here.

## II.     Venue is Proper in this District.

Under 28 U.S.C. § 1391(b)(3), venue is proper in any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action. The events described above relating to Boston Tutelage's services and Mr. Joo's accessing of Allen's immigration documents, as well as the making of the defamatory broadcast, all occurred in Cambridge, Allston, and Watertown which makes venue in this district proper.

## III.    This Case Should Not Be Dismissed Based on Forum Non-Conveniens.

Where a plaintiff has brought suit in his home state, the defendant bears a heavy burden of showing that this choice results in inconvenience to it which is out of all proportion to his convenience of having the case heard in its home state. Piper v. Reyno, 454 U.S. 235, 236 (1981). In considering whether a claim should be dismissed on forum non-conveniens grounds, a court will consider various private and public interest factors. Private factors include the relative ease of access to sources of proof, availability of compulsory process and cost of obtaining attendance of unwilling witnesses, and trial costs. Public interest factors include local interest in hearing the law suit, and whether or there will be choice of law questions or application of foreign law.

### A.     Private Interest Factors Support this Case Staying in Massachusetts

#### 1.     The Parties will Have Relative Ease of Access to Sources of Proof.

All the facts giving rise to Allen's claims for fraud and breach of fiduciary duty related to the Boston Tutelage payments, and his defamation claims, occurred in the Cambridge, Allston, and Watertown. Allen, who currently lives in Watertown, would be a witness in this case. The sources of proof in this case will include Allen's testimony as well as documentary evidence including wire transfer records, immigration records, and electronic files such as those containing the broadcast. None of this evidence will be difficult to obtain in Massachusetts. Other witnesses may include Massachusetts residents, such as employees from BBQ, who witnessed Ms. Lee come in to search for Allen. While Mr. Joo and potentially some other witnesses live in New Jersey, that does not strongly outweigh the relative ease of access of evidence in Massachusetts.

**2.      The Availability of Compulsory Process and Cost of Obtaining Attendance of Unwilling Witnesses Does Not Support Dismissal.**

As discussed above, this case will likely involve a mix of witnesses from Massachusetts and New Jersey, with the primary witnesses being Allen and Mr. Joo. This Court would be able to subpoena any located in Massachusetts or New Jersey if necessary.

**3.      Trial costs will not be substantially higher in Massachusetts than in New Jersey.**

Because Allen lives in Massachusetts and most of the documents are electronic and easily available the costs will not be substantially higher if the case proceeds in Massachusetts.

**B.      Public Interest Factors Support this Case Staying in Massachusetts**

**1.      There is a Local Interest in Adjudicating this Lawsuit.**

Mr. Joo took advantage of Boston's reputation for its good school system by creating Boston Tutelage and used that company to defraud a Massachusetts resident. Massachusetts has an interest in protecting its residence from these kinds of deceptive business practices. While New

Jersey also has an interest in protecting its residents from the kinds of conduct described in the Complaint, that interest does not strongly outweigh Massachusetts' interest.

### 2.      Choice of Law Factors Do Not Warrant Dismissal.

 Regarding the acts that occurred here, Massachusetts law, including M.G.L Ch. 93A would apply. Choice of law factors, therefore, do not warrant dismissal.

As the public and private do not "strongly favor resolving the claims in the alternative forum," dismissal on forum non-conveniens grounds is not warranted. See Imamura v. General Electric Company, 2019 WL 1513454 (2019) (quoting Iragorri v. Int'l Elevator, Inc., 203 F.3d 8, 12 (1st Cir. 2000)).

## IV.     The Contract Claims Are Adequately Plead and Not Barred By the Statute of Frauds Because Defendant Could Perform Within One Year and Partially Performed.

Allen's Complaint clearly spells out that a contract existed and that Mr. Joo breached that contract.  In Paragraph 7 of the Complaint, Allen alleges that Allen's parents hired Mr. Joo to "act as [his] guardian in the U.S. in exchange for payment."[1]  The Complaint then details how Mr. Joo, instead of caring for Allen and providing even a minimum level of care, constantly bullied him, abused him mentally and physically, and neglected him.  (Complaint ¶¶ 6-29.)  The Complaint also alleges that Mr. Joo received funds for acting as guardian to Allen, something he failed to do.  (Id.  ¶¶ 30-32.)   These allegations more than adequately plead a claim for breach of contract.  See Singarella v. City of Boston, 342 Mass. 385, 387 (1961).

---

[1] On June 7, 2019, Hong Geun Yoon assigned to Allen "all claims and causes of action, whatsoever, whether in contract or in tort, or any other nature, against Hyunwook Joo ("Defendant") which Assigner now has, or even had from the beginning of the world until the present."  Allen recently filed a motion to amend his complaint.  This assignment is mentioned in the proposed amended complaint.

Additionally, while the contract to act as guardian was oral, it is not barred by the statute of frauds. The statute of frauds "applies only to contracts which by their terms cannot be performed within the year. It does not apply to contracts which may be performed within, although they may also extend beyond, that period." Doherty v. Doherty Ins. Agency, Inc., 878 F.2d 546, 551 (1st Cir. 1989) (quoting Rowland v. Hackel, 243 Mass. 160, 162 (1922)).

Here, the contract with Mr. Joo could have been performed within a year. Allen could have died during that time period, or less tragically just left his schooling in the United States. Moreover, Mr. Joo's contract could have, and likely would have, been terminated within one year, if Allen's parents had discovered Mr. Joo was failing to perform his end of the bargain satisfactorily. The agreement was not for a fixed amount of years. Instead, the parties to the contract intended it to be in place while Allen was in the United States for his schooling. Again, there are any number of reasons why the agreement could have been performed within a one-year period. That it was extended beyond one-year, because of the decision to continue Allen's United States education, does not mean that the agreement cannot be enforced because of the statute of frauds. See id.; see also Boothby v. Texon, Inc., 414 Mass. 468, 479 (1993) (because contract for permanent employment could have been performed within the year, as a result of plaintiff's death, business's termination, or plaintiff's termination, statute of frauds not applicable).

Moreover, the Parties' subsequent conduct after finalizing their contract confirms the existence of the agreement. Allen moved to the United States and lived with Mr. Joo and was in his custody. (Complaint ¶¶ 6-7.) Additionally, Mr. Joo received a substantial amount of money for Allen's care. (Id. ¶ 31.) The documents evidencing the payments alone are sufficient to recognize and validate the oral argument. See M.G.L. c. 106, § 2-201 Comment 1 ("All that is

required is that the writing afford a basis for believing that the offered oral evidence rests on a

real transaction.)

Further, the statute of frauds does not apply when there has been part performance of the

oral contract.   Here, Mr. Joo provided Allen with a place to live in the United States while he

attended school and received payments for Allen's care and education.   Because of this part

performance the statute of frauds does not apply.   See Brewster Wallcovering Co. v. Blue

Mountain Wallcoverings, Inc., 68 Mass. App. Ct. 582, 600 (2007) (statute of frauds did not apply

when there was continuous part performance of contract as evidence by a number of actions and

documents including substantial payments").

## V.   Allen's Breach of Fiduciary Duty Claim is Sufficiently Pled and Not Barred by the Statute of Limitations.

Allen's Complaint contains allegations that are more than sufficient to allege a breach of

fiduciary duty owed by Mr. Joo.   Mr. Joo served as Allen's guardian while Allen was in the

United States.   (Complaint ¶¶ 6-7.)   Mr. Joo was hired in this capacity when Allen was just 11

years old and acted as Allen's de facto guardian while Allen was a minor.   (Id.)   In that capacity,

Mr. Joo was responsible for Allen's care and for his education and the payment for that

education.   Allen was dependent on Mr. Joo for both his care and his educational needs.   These

allegations sufficiently depict a fiduciary relationship.   See Yousif v. Yousif, 61 Mass. App. Ct.

686, 696 (2004); see also Markell v. Sidney B. Pfeifer Foundation, Inc., 9 Mass. App. Ct. 412,

444 (1980) (fiduciary relationship found where aunt "had utmost trust and confidence" in

nephew and relied on his "judgment and integrity in committing to him the management of her

securities"); Sullivan v. Rooney, 404 Mass. 160, 163 (1989) (fiduciary relationship existed where

plaintiff relied on defendant "over a long period in important matters.")

Further, Allen's claim for breach of fiduciary duty is not barred by the applicable three-year statute of limitations. First, the Complaint indicates that Mr. Joo's misuse of Allen's fund continued until "June of 2016." (Complaint ¶ 31.) The Complaint also indicates that on or about October 25, 2018, Mr. Joo orchestrated the defamatory news article broadcast by KBS. (Id. ¶ 34.) As part of his scheme, Mr. Joo gave away Allen's address, phone number, and confidential information contained in immigration documents, to a reporter, Ms. Lee. (Id. ¶¶ 37-38.) All of the above detailed actions occurred within the three years before Allen filed his Complaint on February 22, 2019. See Kravetz v. U.S. Trust Co., 941 F. Supp. 1295, 1302 (D. Mass. 1996).

Additionally, for breach of fiduciary duty claims, the statute of limitations is tolled until a plaintiff has "actual knowledge" that they were injured by a fiduciary's conduct. See Doe v. Harbor Schools, Inc., 446 Mass. 245, 246 (2006). Mere suspicion or mere knowledge that the fiduciary has acted improperly does not amount to actual knowledge that the plaintiff has suffered harm. Lattuca v. Robsham, 442 Mass. 205, 213 (2004). This protects the beneficiary's legitimate expectation that the fiduciary will act with the utmost probity in all matters concerning the relationship. See Harbor Schools, Inc., 446 Mass. at 255. Payments to Mr. Joo continued until June of 2016. (Complaint ¶ 31.) At the very least, an issue of fact exists as to when Allen had "actual knowledge" that he was injured due to Mr. Joo's misuse of funds. See Lattuca, 442 Mass. at 246. This precludes dismissal at this early stage of the case.

## VI.   Allen's Fraud and Conversion Claims Are Sufficiently Pled and Not Barred by the Statute of Limitations.

Mr. Joo claims that because the funds allegedly converted or subjected to fraud did not belong to Allen, he has not sufficiently pled his fraud and conversion claims. This argument ignores the contents of the Complaint. In Paragraph 30 of the Complaint, Allen specifically alleges that Mr. Joo "would take money from [his] wallet."

Moreover, the Complaint alleges in Paragraph 31 that money provided to Mr. Joo "was to be held in trust by Mr. Joo for Allen's education," thus sufficiently alleging that Allen had a possessory or ownership interest in the funds converted and taken through fraudulent means by Mr. Joo.  See Evergreen Marine Corp. v. Six Consignments of Frozen Scallops, 4 F.3d 90, 95 (1st Cir. 1993).

Mr. Joo's statute of limitations argument is similarly unavailing.  Mr. Joo fraudulently misused and converted funds "until June of 2016."  (Complaint ¶ 31.)   Accordingly, Allen's Complaint, which he filed on February 22, 2018, was timely and should not be dismissed.  See Ansin v. River Oaks Furniture, Inc., 105 F.3d 745, 752-53 (1st Cir. 1997); First Choice Armor & Equip., Inc. v. Toyobo America, Inc., 839 F. Supp. 2d 407, 413 (D. Mass. 2012).[2]

## VII.   Allen's Complaint Sufficiently Alleges Mr. Joo Made Defamatory Statements About Him Within the Three-Year Statute of Limitations.

Allen's Complaint alleges that Mr. Joo falsely stated that Allen's living expenses and education were being paid for with embezzled funds.  This statement directly concerns Allen.  If it did not why would Ms. Lee, the reporter from KBS, travel from South Korea to Massachusetts to locate and interview Allen.[3]

Moreover, all of the statements made about Allen occurred on or about October 25, 2018. Allen filed his Complaint on February 22, 2019, well within the three-year statute of limitations period.  See McLaughlin v. Boston Retirement Board, 146 F. Supp. 3d 283, 290 (D. Mass. 2015).

## VIII.   Allen's Complaint Sufficiently Alleges that Mr. Joo's Conduct Was Extreme and Outrageous and Occurred Within the Three-Year Statute of Limitations.

---

[2] Allen's father recently assigned to him all of his tort and contract claims against Mr. Joo.  Assuming arguendo that misused funds were Allen's father's, pursuant to the assignment of claims Allen is still entitled to pursue those claims.
[3] Again, to the extent Mr. Joo made statements regarding Allen's father, Allen is entitled to pursue those claims pursuant to the assignment of claims.

To determine whether conduct is sufficiently extreme and outrageous to support a claim for intentional infliction of emotional distress courts look to the "totality of the circumstances." Taylor v. Swartwout, 445 F. Supp. 2d 98, 105 (D. Mass. 2006).  In fact, "[r]epeated harassment . . . may compound the outrageousness of incidents which, taken individually, might not be sufficiently extreme to warrant liability for infliction of emotional distress.  Boyle v. Wenk, 378 Mass. 592, 595 (1978).  Where "reasonable men may differ" as to whether a plaintiff has alleged facts and circumstances which reasonably could lead the trier of fact to conclude that the defendant's conduct was extreme and outrageous, the question should go to the jury.  Foley v. Polaroid Corp., 400 Mass. 82, 103 (1987) (citing Restatement (Second) of Torts § 46 comment h (1965)).

Here, the Complaint details a harassment campaign undertaken by Mr. Joo against Allen over several years.  Mr. Joo took a naked picture of Allen to make fun of Allen going to a camp for overweight children.  (Complaint ¶ 14.)  He repeatedly called Allen fat and stupid. (Id. ¶¶ 13, 15, 16, 17, 24, 28.)   He also physically abused Allen, kneeing him, punching him in the arm, slapping him on the back, and hitting his testicles.  (Id. ¶ 22.)   Mr. Joo also restricted Allen's movements within his home.  (Id. ¶¶ 23, 25, 27.)  He also interfered with Allen receiving appropriate medical care.  (Id. ¶¶ 13, 19.)    The years of abuse left Allen traumatized with great psychological distress, a feeling of low self-esteem, and a feeling of being unworthy, resulting in Allen receiving therapy.  (Id. ¶¶ 20, 29.)  This repeated physical and mental harassment is far beyond "mere insults, indignities, threats, annoyances, petty oppressions or other trivialities." Compare Tetrault v. Mahoney, Hawkes & Goldings, 425 Mass. 456 (1997) (evidence that wife, who had strained relationship with husband's family, asked husband of 27 years to put home in both of their names shortly before his death does not constitute extreme or outrageous conduct)

with <u>Agis v. Howard Johnson Co.</u>, 371 Mass. 140 (1976) (public humiliation involving firing all present waitresses in alphabetical order starting with plaintiff sufficiently alleged extreme and outrageous conduct); <u>George v. Jordan Marsh Co.</u>, 259 Mass. 244, 246 and 256 (1971) (repeated and malicious threats and harassing telephone calls to mother of debtor by creditor sufficient to state claim for intentional infliction of emotional distress).

Further, Mr. Joo orchestrated the false news story broadcast by KBS about Allen and how his living expenses and education paid for.  (Complaint ¶ 34.)  This was part of Mr. Joo's harassment campaign against Allen and occurred on or about October 25, 2018, within the three-year statute of limitations period.  (<u>Id</u>.)

Additionally, the Massachusetts "discovery rule" precludes dismissal of Allen's intentional infliction of emotional distress claim.  Under the "discovery rule," the limitations period does not begin to run until a plaintiff has "(1) knowledge or sufficient notice that [he] was harmed and (2) knowledge or sufficient notice of what the cause of the harm was."  <u>Bowen v. Eli Lilly & Co.</u>, 408 Mass. 204, 208 (1990).  "The delayed knowledge may be either the fact of the injury . . . or the cause of the injury."  <u>Cambridge Plating Co., Inc. v. Napco., Inc.</u>, 991 F.2d 21, 25 (1st Cir. 1993).

In <u>Armstrong v. Lamy</u>, 938 F. Supp. 1018 (D. Mass. 1996) the court was asked to determine whether the statute of limitations barred a claim involving a thirteen-to-fifteen-year-old boy subject to years of sexual abuse by his music teacher.  Despite the plaintiff indicating that he was "scared," "uncomfortable," "nervous," "suffered from insomnia," and "felt physical pain," the court ruled that a reasonable boy subjected to such conduct might have "his judgment altered" in such a way as to "cause an injury that by its very nature prevents the discovery of its cause."  <u>Armstrong</u>, 938 F. Supp. at 1039-1040.

Similarly, here, a finder of facts could reasonably find that a reasonable boy who had been subjected to years of Mr. Joo's psychological and physical abuse might have his judgment altered by Mr. Joo's conduct in such a way as to cause an injury that by its very nature could prevent the discovery of the cause of action.  <u>See id</u>.  Mr. Joo's motion should, therefore, be denied.  <u>See id</u>.

Respectfully Submitted,
HYEWOONG YOON,
By his Attorneys.

<u>/s/ Joseph Perl</u>
Joseph Perl
B.B.O. 680509
Law Office of Joseph Perl
203 Arlington St., Suite 2
Watertown, MA 02472
781-704-7047
perl@perlattorney.com

<u>/s/ Bernard D. Posner</u>
Bernard D. Posner, Esquire
BBO No. 659020
FURMAN GREGORY DEPTULA
4 13TH Street, Suite 2
Boston, MA  02129
(617)886-6145
bernard@fgd-law.com

## <u>Certificate of Service</u>

I hereby certify that on June 12, 2019 this document was filed through the ECF system and was sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF).

/s/ Joseph Perl
Joseph Perl